JONATHAN DAY & another *vs.* EDWARD LAMB & another.

Under the Rev. Sts. *c.* 90, § 105, the death of a debtor dissolves an attachment of his property, although proceedings in insolvency have been commenced against him, and the attachment ordered to survive for the benefit of his assignee under *St.* 1841, *c.* 124, § 5.

Under *St.* 1838, *c.* 163, § 3, a commissioner of insolvency, upon the application of subsequent mortgagees of real estate, may order the sale of the interest mortgaged to them and subject to prior mortgages, but not of the whole estate.

Where application is made to a commissioner of insolvency under *St.* 1838, *c.* 163, § 3, for the sale of real estate, to be applied to the payment of a mortgage thereon, which is alleged by the assignee to be fraudulent, the commissioner must determine the validity of the mortgage, before ordering a sale.

PETITION to this court under *St.* 1838, *c.* 163, § 18, by the assignees of Charles C. Clapp, an insolvent debtor, to vacate an order passed by a commissioner of insolvency for the sale of " the real estate" of said debtor, described in a petition of Edward Lamb and Albert H. Foster, third and fourth mortgagees thereof. The first and second mortgages thereon had been assigned to the petitioners. Hearing before *Thomas,* J., who

reserved the case for the consideration of the full court. The facts appear in the opinion.

*P. C. Bacon & P. E. Aldrich,* for the petitioners.

*C. Allen & W. A. Williams,* for the respondents.

DEWEY, J. The object of the present petition is to set aside the order of a commissioner of insolvency directing a sale of certain mortgaged premises belonging to the estate of the insolvent debtor. The order for such sale is in general terms, and was made solely upon the application of persons holding third and fourth mortgages. The case presents several questions arising upon the peculiar facts of this case, which do not arise in the ordinary cases of application by a mortgage creditor to have the premises sold.

1. There was an attachment of the premises at the suit of James H. Wall, made two days prior to the recording of the fourth mortgage, and which, upon the application of the assign-. ees, had been ordered by the commissioner to be continued for the benefit of the creditors generally; and this attachment, if still in force, would take precedence of the fourth mortgage. After the attachment was thus ordered to be continued at the request of the assignees, the insolvent debtor died, and within one year after his decease an administrator upon his estate was duly appointed, who accepted the trust, and has been cited to appear and defend said action.

In all ordinary cases, not connected with proceedings in insolvency before a commissioner, such death of a debtor whose property is attached, and upon whose estate an administrator is appointed within one year after the decease of the debtor, dissolves such attachment. Rev. Sts. *c.* 90, § 105. *Parsons* v *Merrill,* 5 Met. 359.

The further inquiry is, whether the case differs, in consequence of the proceedings in insolvency instituted against the debtor while living, and the order of the commissioner that the assignees might continue such suit and attachment. Under the *St.* of 1838, *c.* 163, no provision was made for continuing any attachment that might have existed against the insolvent debtor. All the provisions of § 5 have reference to

suits where the debtor was the plaintiff; and the provision, that if the debtor should die after the issuing of the warrant, the proceedings should notwithstanding be continued and concluded in like manner and with like validity as if he had lived, does not have reference to suits against the debtor, but to the general proceedings to be followed by assignees in settling the estate of an insolvent debtor.

It being found that the dissolution of the attachment, which was expressly required by that statute, might fail to secure the property attached as assets of the insolvent, to be held by his assignees, but the same might pass to those holding subsequent liens thereon by mortgage or pledge, the *St.* of 1841, *c.* 124, § 5, enacted that the attachment might be continued, notwithstanding the proceedings in insolvency, by order of the commissioner, and that the assignees might proceed with the suit against the insolvent to final judgment and execution. The case here provided for is that of an ordinary debtor in full life, and was doubtless intended to qualify the provisions of the earlier and general insolvent law of 1838, *c.* 163, which had in express terms dissolved all attachments against insolvent debtors. To this extent, it was well adapted in its provisions, and may be invoked in all cases where a dissolution of attachment would be caused by the *St.* of 1838, *c.* 163.

But there had long existed other provisions for dissolving attachments, and these were not embraced in the *St.* of 1841, *c.* 124. Thus it had been enacted by the Rev. Sts. *c.* 90, § 105, that whenever an attachment of property had been made, and the debtor died before it was taken or seized on execution, the attachment should be dissolved, provided administration of the estate of the deceased should be granted within one year after his decease. Such dissolution of attachment, by the death of the debtor, is not within the provisions of the *St.* of 1841, *c.* 124; and the order of the commissioner, continuing the suit, did not operate to continue the attachment beyond the life of the debtor. It prevented the dissolution of the attachment, that would result from the statute of 1838, *c.* 163, § 5; but it did nothing more.

The result therefore upon this point in the case is, that in making sale of the mortgaged premises, or in the application of the proceeds of such sale, no regard is to be had to such attachment, and the same is not to be treated as an incumbrance upon the premises, but as having been dissolved by the death of the defendant in that action.

2. The proposed sale, if ordered, is to be a sale of the debtor's right in equity to redeem the two mortgages existing prior to the mortgages to Lamb and Foster, and not a sale of the premises as an unincumbered estate, appropriating the avails in the order of the mortgages. The third and fourth mortgagees, upon whose petition the proposed sale is to be ordered, cannot thus interfere with the earlier mortgagees. Such sale by public auction might operate prejudicially to their interest, and can only be effected through their concurrence. The petitioners for a sale of the premises are only mortgagees of an equity of redemption. As such, they may pay off the previous mortgages, and thus relieve themselves from any embarrassment arising from a mere sale of the equity of redemption ; but until that is done, the earlier mortgagees may hold the estate to secure their mortgages ; and no sale under the order of a commissioner, on the application of a junior mortgagee, can affect their rights. *Hunnewell* v. *Goodrich,* 3 Cush. 471. *Richardson* v. *Wyman,* 4 Gray, 555.

3. The assignees having alleged that the fourth mortgage is fraudulent, and was made in violation of the rights of the other creditors of the insolvent, and also in violation of the insolvent laws of this commonwealth, before making any order for the sale of the debtor's right in equity, upon the petition of the fourth mortgagee, for the purpose of making an application of the proceeds thereof to the discharge of such mortgage, the commissioner will inquire and determine whether such mortgage was made in fraud of the rights of other creditors, or in violation of the insolvent laws ; and if he finds such to have been the fact, no order should be made for any sale on account of such mortgage, but the sale should be ordered solely with reference to the third mortgage, and the application of the pro-

ceeds to that mortgage only. The former order of the commissioner for the sale of the mortgaged premises is therefore rescinded, and no further proceedings will be had thereon; and a new order will be made in conformity with the principles above stated.